ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROSA ISELA CRUZ SÁNCHEZ Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>DALITZA LUGO SOLER Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>LUVY ANN ROLDÁN GONZÁLEZ Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>ZORAIDA MÉNDEZ CARRERO Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>SANDRA MONSEGUR SUÁREZ Y OTROS<br>Recurridos<br><br>v. | KLCE202500300 consolidado con KLCE202500320 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.<br>D AC2009-1225 consolidado con<br>D AC2009-2359;<br>D AC2011-0150;<br>D AC2010-3935 y<br>D AC2019-0008<br><br>Sobre:<br>Incumplimiento de contrato, cobro de dinero, daños y perjuicios |

Número Identificador

RES2025_____

| TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS Peticionarios | | |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

## RESOLUCION

En San Juan, Puerto Rico, a 16 de mayo de 2025.

Comparecen Trans-Oceanic Life Insurance Company (TOLIC) y Touma & Taveras, Inc. (T&T)[1], así como Universal Life Insurance Company (Universal y en conjunto peticionarios), mediante peticiones de *certiorari* (KLCE202500300 y KLCE202500320) instadas ante esta Curia, el 26 y 28 de marzo de 2025, respectivamente.

En vista de que, los referidos recursos corresponden a las mismas partes e impugnan el mismo dictamen interlocutorio, notificado por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 26 de febrero de 2025, mediante el cual, el TPI denegó una solicitud de exclusión de prueba pericial, ordenamos la consolidación de estos, conforme autoriza la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 80.1.[2]

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari.*

---

[1] Este último exclusivamente en el caso número D AC2019-0008.
[2] Véase, Orden Administrativa DJ 2019-316 de 21 de noviembre de 2019, según enmendada por la Orden Administrativa DJ 2019-316A del 28 de julio de 2020, sobre la consolidación de recursos.

Hemos deliberado los méritos del recurso y concluimos no expedir el auto solicitado. A pesar de que este Tribunal de Apelaciones, no tiene que fundamentar su determinación al denegar un recurso de *Certiorari*,[3] en ánimo de que no quede duda en la mente de las partes sobre los fundamentos al denegar ejercer nuestra facultad revisora, abundamos.

Al entender sobre la causa surge que, el foro primario justipreció la *Moción in limine conjunta para excluir el testimonio y el informe pericial de Daniel E. Garavito Medina propuesto por los demandantes,* [4] presentada el 3 de septiembre de 2024 por TOLIC, Universal y T&T. A lo antes, se opusieron los recurridos.[5] En esencia, al declarar sin lugar el referido petitorio, el TPI consideró que las alegaciones de los peticionarios sobre los defectos del testimonio escrito u oral del perito no representan un problema de admisibilidad, sino de posible defecto en el valor probatorio. Por lo cual, los peticionarios impugnan el dictamen recurrido por entender que, el TPI erró en su aplicación del derecho evidenciario y al no conceder una vista previa a la adjudicación del petitorio.[6]

---

[3] Véase la Regla 52. 1 de las Reglas de Procedimiento Civil 32 LPRA Ap. V., R. 52.1.

[4] Apéndice, KLCE202500300, págs. 616-791.

[5] Apéndice, KLCE202500300, págs. 792-821.

[6] En el recurso núm. KLCE202500300 señalan lo siguiente:1) Incidió gravemente el TPI Sala Superior de Bayamón al negarse a excluir el testimonio pericial inadmisible del Lcdo. Daniel E. Garavito Medina considerando que los asuntos planteados por todos los demandados no representan un problema de admisibilidad, sino de posible defecto en el valor probatorio o van dirigidos al peso de la prueba.2) Erró el TPI Sala Superior de Bayamón al no señalar una vista evidenciaria antes de denegar la exclusión del testimonio e informe pericial.  En el Recurso núm KLCE202500320 señalan la comisión de los siguientes errores:1) Erró el TPI al concluir que los defectos de la prueba pericial de los demandantes no representan un problema de admisibilidad, sino de valor probatorio. Por los cambios introducidos en la revisión de 2009 a la hoy la Regla 702 de Evidencia, la evidente falta de valor probatorio es un criterio para la admisibilidad de la prueba pericial previo al juicio. 2)Erró el TPI al resolver que la prueba pericial propuesta no es tan determinante como para descartarla previo al juicio, cuando el perito presume un hecho esencial a la reclamación, sin prueba alguna que lo avale. 3)El TPI incurrió en un claro abuso de discreción al no hacer un análisis ponderado de los factores de la Regla 702 y combinarlos con la Regla 403 de Evidencia para excluir previo al juicio la prueba pericial ofrecida por los demandantes. 4) Erró el TPI al no conceder una vista probatoria de admisibilidad o una vista in limine sobre el perito de los demandantes por razones de economía procesal y eficiencia en la administración de la justicia.

En consideración a lo anterior, y luego de evaluar detenidamente el expediente ante nuestra consideración, no encontramos indicio de que el foro recurrido haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción, o cometido algún error de derecho. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

Además, no identificamos fundamentos jurídicos que nos muevan a expedir el auto de *Certiorari* solicitado, conforme a los criterios que guían nuestra discreción para ejercer nuestra facultad revisora en este tipo de recurso. Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

Por los fundamentos antes expresados, *denegamos* la expedición del auto de *Certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Rivera Marchand disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROSA ISELA CRUZ SÁNCHEZ Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>DALITZA LUGO SOLER Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>LUVY ANN ROLDÁN GONZÁLEZ Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>ZORAIDA MÉNDEZ CARRERO Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS<br>Peticionarios<br>_____<br><br>SANDRA MONSEGUR SUÁREZ Y OTROS<br>Recurridos<br><br>v.<br><br>TRANS-OCEANIC LIFE INSURANCE COMPANY Y OTROS | KLCE202500300 consolidado con KLCE202500320 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.<br>D AC2009-1225 consolidado con D AC2009-2359; D AC2011-0150; D AC2010-3935 y D AC2019-0008<br><br>Sobre: Incumplimiento de contrato, cobro de dinero, daños y perjuicios |

| Peticionarios | | |
|---|---|---|
|  | | |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

### VOTO DISIDENTE DE LA JUEZA RIVERA MARCHAND

En San Juan, Puerto Rico, a 16 de mayo de 2025.

Respetuosamente disiento de la determinación mayoritaria. Corresponde ordenar la expedición del auto de *certiorari,* devolver el asunto ante el foro primario para la celebración de una vista para dilucidar la admisibilidad del informe y testimonio del perito de la parte demandante. Lo antes, sin trastocar el calendario judicial de este litigio que, después de más de 14 años tiene pendiente otra conferencia con antelación al juicio y luego el juicio en su fondo. Procedemos con una reseña detenida de los asuntos atinentes a la causa que nos ocupa.

La causa ante nos ha tenido un extenso trámite procesal iniciado en el 2009 por cincuenta y seis agentes de seguros[7] contra Universal y TOLIC. En el caso instado por la señora Sandra

---

[7] Los demandantes están compuestos por Rosa Isela Cruz Sánchez, José A. Medina Nieves y la Sociedad Legal de Gananciales compuesta entre ambos; Denisse Quiñones Ortiz y Wilfredo Jiménez Sepúlveda, en sustitución de su fallecido padre, Sonia Ivette Serrano Ayala; Miguel A. Delgado Vargas; Brenda I. Dávila Rivera y la Sociedad Legal de Gananciales compuesta entre ambos; Denisse Rosario Alvarado, Jerry Jiménez Alicea y la Sociedad Legal de Gananciales compuesta entre ambos; Yara Lee Vargas Báez, José E. Rodríguez Ortiz y la Sociedad Legal de Gananciales compuesta entre ambos; Jackeline Rosa Reyes; Viviana Vera González; Olga Corporán Abreu; Lilliam Santiago Díaz; Elizabeth Pérez Rojas; Wilma De Jesús Cruz; Vanessa Jiménez Rosa; Ariel Aulet López y Abey Aulet López, en sustitución de su madre fallecida, Lucy A. López Martínez; William Álvarez Carrasquillo; Lucas Pérez Cubero; Francis Rodríguez Arroyo; Brenda Lee Burgos Flores; Emily Torres Velázquez; María de Lourdes Robles Morales; René Navarro Solís; Olga E. Rivera Sierra; Ocasia Rodríguez Santana; Yolanda Báez Rodríguez; Miriam Báez Rodríguez; Valerie Ferrer Nevárez; Héctor Rivera Cueto; Víctor Rivera Cueto; Liz N. Torres Hernández; Dinorah Montañez Figueroa; Elida Selene Alderete Palma, Juan G. Serrano Negrón y la Sociedad Legal de Gananciales compuesta por ambos; Evelyn Pereira Alméstica, Ernesto Villegas Figueroa y la Sociedad Legal de Gananciales compuesta por ambos.

Monsegur Suárez y otros, se incluyó la compañía T&T como codemandada.[8] En esencia, los promoventes de la acción instada, en calidad de agentes de seguros, gerentes y agentes generales (en conjunto agentes o demandantes o recurridos) fueron contratados por Universal para solicitar y ofrecer pólizas de seguros de cáncer de enfermedades temidas y accidentes. A su entender, Universal se obligó a compensarlos a base de comisiones de renovaciones y sobrecomisiones de renovación, conforme a una tabla de comisiones anejada a los contratos suscritos entre ellos y Universal. Lo antes, a su entender, comprendía un periodo de diez años desde la fecha de efectividad de la póliza aun si el contrato fuera terminado, salvo por justa causa. Los agentes cobraron sus comisiones hasta marzo de 2008 cuando mediante un *Contrato de Compraventa y Cesión de Derechos,* Universal vendió la cartera de pólizas de cáncer y enfermedades temidas a TOLIC. Expusieron que, al traspasar la cartera de pólizas, Universal, traspasó sus derechos como acreedores de las comisiones y/o sobrecomisiones de renovación sin pagar lo adeudado y sin su anuencia. Detallaron que, Universal ha emitido cheques para honrar el pago de lo adeudado, pero TOLIC se ha negado a entregar los pagos, pendiente a que cada agente firme un nuevo contrato con TOLIC.[9]

Por ello y entre otros asuntos expuestos, reclamaron remedios por incumplimiento de contrato, interferencia torticera, cobro de dinero, enriquecimiento injusto, así como, resarcimiento por los daños y perjuicios sufridos a causa de los actos y de las omisiones realizadas por las referidas compañías aseguradoras. En particular, reclamaron el pago de la deuda correspondiente a cada uno de los demandantes a saber:[10]

---

[8] Caso civil núm. D AC2019-0008.
[9] Salvo la señora Viviana Vera González y el señor José M. Suarez Alfonso, quienes firmaron contrato con TOLIC. Apéndice KLCE202500320, pág. 44. Alegación número 67.
[10] Apéndice KLCE20250320 págs. 52-53.

| | | |
|---|---|---|
| a. | Rosa Isela Cruz Sánchez | $189,230.00 |
| b. | Dennisse Quiñones Ortiz | $260,923.00 |
| c. | Sonia Ivettte Serrano Ayala | $489,230.00 |
| d. | Miguel A. Delgado Vargas | $1,000,007.00 |
| e. | Dennisse Rosario Alvarado | $366,923.00 |
| f. | Yara Lee Vargas Báez | $790,923.00 |
| g. | Jackeline Rosa Reyes | $195,692.00 |
| h. | Viviana Vera González | $611,538.00 |
| i. | Olga Corporán Abreu | $1,239.984.00 |
| j. | Lilliam Santiago Díaz | $1,223.076.00 |
| k. | Elizabeth Pérez Rojas | $3,082,153.00 |
| l. | Vanessa Jiménez Rosa | $576,769.00 |
| m. | Wilma De Jesús Cruz | $497,384.00 |
| n. | Hijos de: Lucy A. López Martínez | $501,176.00 |
| o. | William Álvarez | $1,035,538.00 |
| p. | Lucas Pérez Cubero | $1,125,230.00 |
| q. | Francis Rodríguez Arroyo | $1,100,769.00 |
| r. | Brenda Lee Burgos | $1,043,692.00 |
| s. | Emily Torres Velázquez | $407,692.00 |
| t. | María De Lourdes Robles Morales | $424,000.00 |
| u. | René Navarro Solís | $244,615.00 |
| v. | Olga E. Rivera Sierra | $684,923.00 |
| w. | Ocasia Maribel Rodríguez Santana | $293,538.00 |
| x. | Yolanda Báez Rodríguez | $636,000.00 |
| y. | Miriam Báez Rodríguez | $387,307.00 |
| z. | Valerie Ferrer Nevárez | $244,615.00 |
| aa. | Héctor Rivera Cueto | $269,076.00 |
| bb. | Víctor Rivera Cueto | $391,384.00 |
| cc. | Liz N. Torres Hernández | $264,184.00 |
| dd. | Dinhora Montañez Figueroa | $322,822.00 |
| ee. | Evelyn Pereira Almestica | $1,467,692.00 |
| ff. | Elina Selene Alderete Palma | $616,430.00 |

| | | |
|---|---|---|
| gg. | Dalitza Lugo Soler | $326,153.00 |
| hh. | Jorge A. Sepúlveda Rodríguez | $309,846.00 |
| ii. | Orville Rodríguez Pérez | $110,892.00 |
| jj. | Belisa Belén Rosario | $104,369.00 |
| kk. | Janell Ramos Montes | $110,076.00 |
| ll. | Guillermo I. Velázquez | $750,153.00 |
| mm. | Wanda I. Rodríguez Medina | $611,538.00 |
| nn. | Grisel Díaz Hernández | $203,846.00 |
| oo. | Norma Iris Ortiz Ruperto | $244,615.00 |
| pp. | Manuel A. Hernández Amador | $774,615.00 |
| qq. | Luvy Ann Roldán González | $383,230.00 |
| rr. | Maricelis Díaz Serrano | $387,307.00 |
| ss. | Yesenia López Álvarez | $300,061.00 |
| tt. | Yadira Pérez Rivera | $407,692.00 |
| uu. | Omar Rodríguez Serrano | $415,846.00 |
| vv. | José M. Suárez Alfonso | $2,136,307.00 |
| ww. | Jennifer Merle Pérez | $138,615.00 |
| xx. | José L. Torres Pacheco | $675,784.00 |
| yy. | Zoraida Méndez Carrero | $705,000.00 |
| | Total | $30,090,460.00 |

Universal acreditó su alegación responsiva y presentó una reconvención, así como demanda coparte contra TOLIC y T&T respectivamente.[11] En síntesis, negó cualquier obligación de pago de las comisiones reclamadas por los agentes demandantes debido al retiro de Universal del mercado de seguros de cáncer y enfermedades temidas. Según su postura, en el contrato de compraventa surge que, TOLIC asumió la responsabilidad sobre las obligaciones y responsabilidades con los agentes de seguros, así

---

[11] Apéndice, KLCE202500300, págs. 76-128, *Contestación A La Tercera Demanda Enmendada, Reconvención A La Tercera Demanda Enmendada, Demanda Enmendada Contra Coparte TOLIC y Demanda Contra Tercero Touma y Taveras.*

como sobre los gastos derivados de las comisiones y primas cobradas. En las tres causas de acción expuestas en la reconvención, Universal imploró al foro primario determinar, mediante una sentencia declaratoria, los derechos y obligaciones de las partes y que los agentes demandantes están impedidos de recibir compensación debido a su violación a los deberes de lealtad y de fiducia bajo los términos de sus respectivos contratos de agentes de seguro. En la alternativa, indicó que, toda cantidad por concepto de comisiones que cada demandante recibió por las pólizas que sustituyeron las pólizas del porfolio en disputa, debe ser deducida de cualquier cantidad que en su día se adjudique a su favor. Por último, solicitó remedios por alegado incumplimiento de contrato.[12]

Por su parte, TOLIC[13] negó lo expuesto por los demandantes por entender que, no existe obligación de pago, toda vez que, para continuar cobrando comisiones de renovaciones de pólizas, los demandantes tienen la obligación de completar un contrato de agencia o agente. Resaltó que, el rechazo voluntario de los demandantes de tener una relación contractual con TOLIC después de trabajar con Universal, constituyó una renuncia voluntaria a cualquier remedio posterior. En particular solicitó que, se declarara con lugar la reconvención para condenar así a los agentes reconvenidos al pago de las sumas reclamadas, conforme lo pactado en la cláusula 13.2 del *Contrato de Compraventa y Cesión de Derechos.* En la alternativa, solicitó que cualquier resarcimiento a favor de los agentes sea responsabilidad exclusiva de Universal.

---

[12] Cabe señalar que Universal incoó demanda contra coparte TOLIC, en la que solicitan que, el TPI emita una sentencia declaratoria en la que determine que TOLIC incurrió en dolo, que la sección 9.1 del contrato de compraventa establece una estipulación a favor de tercero (los demandantes) y la responsabilidad es de TOLIC, que en este caso se desprende enriquecimiento injusto. Además, solicitó la indemnización por gastos incurridos. En la demanda contra coparte T&T, Universal solicitó remedios por enriquecimiento injusto más costas, gastos y honorarios de abogado.

[13] Apéndice, KLCE202500300, págs. 26-180, *Contestación A Tercera Demanda Enmendada; Reconvención Contra La Tercera Demanda Enmendada.*

Los agentes reconvenidos acreditaron sus respectivas alegaciones responsivas en la que negaron lo expuesto, tanto por Universal y TOLIC, respectivamente.[14]

T&T presentó su contestación a la demanda enmendada y reconvención en el caso Sandra Monsegur v. TOLIC.[15] Tras negar las alegaciones resaltó que, en ausencia de relación contractual con Universal, no procede vincular a T&T con las reclamaciones de los agentes de seguros. Mediante su reconvención expuso que ha prestado servicios a TOLIC como "managing agent". Sin embargo, no participó en la contratación de los agentes que vendieron las pólizas adquiridas de Universal por TOLIC. En su consecuencia, solicitaron una sentencia declaratoria para establecer que, T&T se encuentra exento de responsabilidad alguna y, en su lugar, procede indemnización a su favor por interferencia torticera, daños y perjuicios, así como por gastos, costas y honorarios de abogados. En el litigio también se incluyó sendas demandas coparte entre Universal, TOLIC y T&T las cuales fueron debidamente contestadas.[16]

Así las cosas y tras superar múltiples incidencias procesales que resultan innecesarias pormenorizar, el 3 de septiembre de 2024, TOLIC, Universal y T&T presentaron la *Moción in limine conjunta*

---

[14] Apéndice, KLCE202500300, págs. 181-250, *Contestación A La Reconvención Enmendada Contra Coparte TOLIC (Incorrectamente Titulada Demanda Enmendada) En Los Casos Consolidados Excepto En el Caso de Sandra Monsegur Suárez DAC2019-0008*; págs. 473-493; *Réplica A "Reconvención en Solicitud De Sentencia Declaratoria y de Otros Remedios" Presentada Por ULICO en el caso Sandra Monsegur Suárez et al v. TOLlC et als., Civil núm.: D AC2019-0008.*

[15] Apéndice, KLCE202500300, págs. 495- 515.

[16] Véase, Recurso KLCE202500300. Apéndice, págs. 516-558, *Contestación a la "Demanda contra co-parte TOLIC" presentada por ULICO en el caso de Sandra Monsegur Suárez, et al v. TOLIC, et al*; págs. 559-576, *Contestación a Demanda de coparte de Universal Life Ins. Co. Contra Touma & Taveras, Inc.; Reconvención contra Universal Life Insurance Co.; Demanda de coparte de Touma & Taveras, Inc. contra Trans-Oceanic Life Ins. Co.; Toda en el caso de Sandra Monsegur v. Trans-Oceanic Life Ins. Co. (DAC2019-0008)*; págs. 577-580, *Contestación a Demanda de coparte de Touma & Taveras Inc., contra TOLIC en el caso de Sandra Monsegur Suárez DAC2019-0008*; págs. 581-609, *Contestación a la Demanda de co-parte (incorrectamente titulada Reconvención) de TOLIC contra ULICO en el caso Sandra Monsegur Suárez DAC2019-0008.* El 14 de febrero de 2022 el TPI dictó *Sentencia Parcial* autorizando el desistimiento de Iris Yolanda Otero Carmona. Véase, Apéndice, pág. 523 en el recurso núm. KLCE202500320.

*para excluir el testimonio y el informe pericial de Daniel E. Garavito Medina propuesto por los demandantes,* [17] a la cual se opusieron los recurridos.[18] Los peticionarios sostuvieron que el informe y testimonio del perito debe ser excluido, ante la falta de confiabilidad al ser ignoradas, omitidas y/o excluidas múltiples variables indispensables y de indiscutida importancia en sus cómputos que no requieren testimonio pericial. Añadieron que, el informe descansa en hechos que no se ajustan a la prueba admitida y estipulada sobre el comportamiento de la cartera adquirida por TOLIC. En particular, Universal consignó 20 hechos estipulados por las partes que no fueron considerados por el perito.

Por su parte, los recurridos argumentaron que, los promoventes de la moción pretenden imponer requisitos probatorios foráneos a nuestro ordenamiento jurídico y extienden argumentos que corresponden a un contrainterrogatorio como requisito de admisibilidad del informe y testimonio pericial. Plantearon que, los peticionarios intentan trastocar y circunvalar los efectos de las estipulaciones de hechos para sustentar su intención de eliminar la prueba pericial. Ambas partes discutieron lo establecido en varias disposiciones estatutarias y opiniones jurídicas; en particular, citaron lo resuelto en *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579 (1993), *SLG Font Bardón v. Mini-Warehouse,* 179 DPR 322 (2010), entre otras y lo establecido en las Reglas 401, 403 y 702 de las Reglas de Evidencia.

Pendiente lo anterior, los peticionarios instaron una *Moción Conjunta Para Solicitar Una Vista Probatoria De Admisibilidad o Una Vista IN LIMINE Sobre El Testimonio y el Informe Pericial De Daniel*

---

[17] Apéndice, KLCE202500300, págs. 616-791.
[18] Apéndice, KLCE202500300, págs. 792-821.

*Garavito Medina*[19] en la que solicitaron la celebración de una vista probatoria para resolver el referido petitorio instado.

Evaluadas las posturas de las partes, así como, la réplica[20] presentada por los peticionarios, y la dúplica de los recurridos,[21] el TPI denegó el referido petitorio. Ello, por entender que, no procedía la exclusión del informe y el testimonio del perito porque los fundamentos esbozados por los peticionarios corresponden a razones atinentes al valor probatorio del testimonio, que en su día, prestará el perito, por lo que, dichos fundamentos no impiden la admisibilidad del informe y el testimonio del perito, en esta etapa anterior al juicio en su fondo.[22] Asimismo, mediante orden notificada en autos, el 26 de febrero de 2025, el foro primario denegó la solicitud de vista probatoria de admisibilidad del informe y testimonio pericial.[23]

Inconforme, TOLIC, junto a T&T, acuden ante nos mediante el recurso núm. KLCE202500300 y señalan lo siguiente:

> Incidió gravemente el TPI Sala Superior de Bayamón al negarse a excluir el testimonio pericial inadmisible del Lcdo. Daniel E. Garavito Medina considerando que los asuntos planteados por todos los demandados no representan un problema de admisibilidad, sino de posible defecto en el valor probatorio o van dirigidos al peso de la prueba.

> Erró el TPI Sala Superior de Bayamón al no señalar una vista evidenciaria antes de denegar la exclusión del testimonio e informe pericial.

Por su parte, Universal acude ante esta Curia en el recurso núm. KLCE202500320 y señala la comisión de los siguientes errores:

> Erró el TPI al concluir que los defectos de la prueba pericial de los demandantes no representan un problema de admisibilidad, sino de valor probatorio. Por los cambios introducidos en la revisión de 2009 a la hoy la Regla 702 de Evidencia, la evidente falta de valor

---

[19] Apéndice, KLCE202500300, págs. 1014-1027.
[20] Apéndice, KLCE202500300, págs. 941-1013.
[21] Apéndice, KLCE202500320, págs. 998-1015.
[22] Apéndice, Recurso KLCE202500320, págs. 1-3.
[23] Apéndice, KLCE202500320, págs. 9-10.

probatorio es un criterio para la admisibilidad de la prueba pericial previo al juicio.

Erró el TPI al resolver que la prueba pericial propuesta no es tan determinante como para descartarla previo al juicio, cuando el perito presume un hecho esencial a la reclamación, sin prueba alguna que lo avale.

El TPI incurrió en un claro abuso de discreción al no hacer un análisis ponderado de los factores de la Regla 702 y combinarlos con la Regla 403 de Evidencia para excluir previo al juicio la prueba pericial ofrecida por los demandantes.

Erró el TPI al no conceder una vista probatoria de admisibilidad o una vista in limine sobre el perito de los demandantes por razones de economía procesal y eficiencia en la administración de la justicia.

La parte recurrida acreditó su postura el 28 de abril de 2025. En consideración de los planteamientos expuestos por las partes, somos de la opinión que, procede la expedición del auto de *certiorari.*

Como se sabe, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o <u>peritos esenciales</u>, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia.

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). Al entender sobre los méritos de la causa se colige que, nos encontramos en la etapa correcta para ordenar al foro primario atender consideraciones

evidenciarias sobre la prueba pericial, que no causa fraccionamiento indebido, evita mayores gastos, dilaciones indeseables y pretende atender un asunto que no debe esperar a la apelación. Lo antes en consideración al siguiente derecho aplicable que procedemos a resaltar.

La Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702, dispone, en lo pertinente, que "[c]uando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como [perito] -conforme a la Regla 703- podrá testificar en forma de opiniones o de otra manera". A esos efectos, la Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703, dispone que "[t]oda persona está calificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio." La propia Regla 702 de Evidencia, *supra,* establece los criterios para adjudicar el valor probatorio de un testimonio pericial y citamos:

> **REGLA 702. TESTIMONIO PERICIAL**
>
> [...]
> El valor probatorio del testimonio dependerá, entre otros, de:
> (a) si el testimonio está basado en hechos o información suficiente;
> (b) si el testimonio es el producto de principios y métodos confiables;
> (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
> (d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
> (e) las calificaciones o credenciales de la persona testigo; y
> (f) la parcialidad de la persona testigo.
>
> La admisibilidad del testimonio pericial será determinada por el Tribunal de conformidad con los factores enumerados en la Regla 403.

Así también, la Regla 704 de Evidencia, 32 LPRA Ap. VI, R. 704, establece el amplio panorama de datos percibidos que pueden servir como fundamento para sustentar el testimonio pericial. Según esta Regla, un testigo perito podrá fundamentar sus opiniones en los hechos o datos que haya percibido, en los que estén dentro de su conocimiento personal o en los que haya conocido durante el juicio o vista. "Si se trata de materia de naturaleza tal que las personas expertas en ese campo razonablemente descansan en ella para formar opiniones o hacer inferencias sobre el asunto en cuestión, los hechos o datos no tienen que ser admisibles en evidencia." Regla 704 de Evidencia, *supra*.

Conforme a la norma general de admisibilidad de evidencia pertinente recogida en las Reglas 401 y 402 de Evidencia, 32 LPRA Ap. VI, R. 401 y R. 402, el tribunal solamente debe excluir prueba pericial si considera que su valor probatorio está sustancialmente superado por las consideraciones expuestas en la Regla 403 de Evidencia, 32 LPRA Ap. VI, R. 403, a saber: perjuicio indebido, confusión o desorientación, dilación de los procedimientos o prueba repetitiva e innecesaria. De presentarse una objeción sobre la admisibilidad de la prueba pericial, "[...] el tribunal deberá hacer una determinación al amparo de la Regla 403". E.L. Chiesa, *Reglas de Evidencia 2009,* Estados Unidos, Publicaciones JTS, 2009, pág. 221.

Según la Regla 702 de Evidencia, *supra*, el foro judicial cuenta con la discreción para permitir o eliminar el testimonio a la luz de los riesgos indeseados que contempla la Regla 403 del cuerpo normativo en discusión, *supra*. No es suficiente que pese más el elemento negativo que el valor probatorio, sino que, para excluir evidencia pertinente, el tribunal debe determinar que el valor probatorio de la evidencia quedó sustancialmente superado por la presencia de cualquiera de los elementos a los que se alude en la

Regla.  Dicho estándar protege el principio fundamental establecido en la Regla 402 de Evidencia, *supra*: admitir toda evidencia pertinente en ausencia de regla de exclusión aplicable.  Véase, E.L. Chiesa, *op. cit.,* a la pág. 116.  En torno a la discreción conferida a los tribunales, Emmanuelli Jiménez expresa como sigue:

> Bajo la jurisprudencia previa a la nueva Regla 702, los tribunales mantenían amplia discreción para aceptar o rechazar la prueba pericial.  Sin embargo, **opino que ya no es un asunto de mera discreción judicial, sino que el tribunal tiene que analizar y ponderar los factores de valor probatorio de la Regla 702 y combinarlos con la 403 para poder justificar válidamente una determinación de descartar un testimonio pericial**. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño, Nuevas Reglas de Evidencia 2010, supra,* a la pág. 415.  (Nota al calce omitida). (Énfasis Nuestro.)

A lo antes añadimos que, en el caso de *Daubert v. Merrell Dow Pharmaceuticals*, Inc. 509 US 579 (1993) la Corte Suprema de Estados Unidos resolvió que,  la admisibilidad del testimonio pericial queda sujeta al cumplimiento de los cuatro requisitos de confiabilidad allí esbozados, los cuales son: 1) si la teoría o técnica subyacente ha sido o podría ser probada de forma empírica; 2) si la teoría o técnica científica ha sido objeto de revisión por la comunidad científica y ha sido publicada; 3) se tendrá que considerar el potencial de error y; 4) la aceptación de la comunidad científica.  Como se sabe y conforme surge del *Informe de las Reglas de Derecho Probatorio del Comité Asesor del Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial*, al evaluar la referida doctrina federal, el Comité consideró que no procedía aplicar la doctrina *Daubert* de manera estricta. Sin embargo, el Comité no lo eliminó de su faz, al optar por mantener un criterio flexible cuyo alcance permanece ser que la admisibilidad depende si el testimonio es de ayuda al juzgador según los criterios de la Regla 703, *supra* y si supera los factores establecidos en la Regla 403 de las Reglas de

Evidencia, *supra.* [24] En *SLG Font Bardón v. Mini-Warehouse,* supra, (al citar a E.L Chiesa Aponte, el Tratado de Derecho Probatorio, San Juan, Pubs. JTS, 2005, T.I, págs. 498), el Tribunal Supremo destacó que, por un lado, es necesario que una persona quede cualificada como perito, pero se requiere además que, el testimonio sirva de ayuda al juzgador para entender la evidencia o adjudicar un hecho en controversia; de lo contrario, no se debe permitir la prueba pericial.

De lo anterior se desprende que, la discreción del foro de instancia al emitir juicio sobre la admisibilidad y valor probatorio de un testimonio pericial no es irrestricta, toda vez que, tal ejercicio de adjudicación está regido por las guías de las vigentes Reglas de Evidencia de 2009. Lo contrario constituiría abuso de discreción. R. Emmanuelli Jiménez, *La Nueva Regla 702, un cambio fundamental en la presentación de prueba pericial*, 44 Rev. Jur. U. Inter. P.R. 341, 348 (2010).

De otra parte, los foros apelativos también nos regimos por los criterios que dispone la Regla 403 de Evidencia, *supra*, a la hora de examinar la admisibilidad y el valor probatorio de los testimonios expertos.[25] Tal juicio será necesario para establecer si erró el foro primario al admitir, excluir o apreciar la prueba pericial. Claro está, siempre se considerará el efecto del error, conforme lo disponen las Reglas 104 y 105 de Evidencia, 32 LPRA Ap. VI, R. 104 y R. 105. *Id.*, a la pág. 349.

En específico, la Regla 104 de Evidencia, 32 LPRA Ap. VI, R. 104, dispone el procedimiento a seguir en torno al ofrecimiento,

---

[24] Véase *Informe de las Reglas de Derecho Probatorio del Comité Asesor del Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial* marzo de 2007 a las págs.418-422.

[25] Como indicáramos anteriormente, la Regla 403 de Evidencia estatuye que la evidencia pertinente podrá ser excluida cuando su valor probatorio sea superado por los siguientes factores: (1) riesgo de causar perjuicio indebido; (2) riesgo de causar confusión; (3) riesgo de causar desorientación al jurado; (4) dilación indebida en los procedimientos; y, (5) presentación innecesaria de prueba acumulativa. 32 LPRA Ap. V, R. 403.

admisión o exclusión de la evidencia.  De otra parte, la Regla 109, *supra,* versa sobre las determinaciones preliminares a la admisibilidad de evidencia.

A la luz de lo anterior, corresponde determinar si el TPI incidió al negar la solicitud de eliminación del informe y testimonio pericial ofrecidos, por los aquí recurridos, sin celebrar una vista evidenciaria previa a la adjudicación del petitorio. Por su estrecha relación se atenderán los señalamientos de error en conjunto.

Conforme lo expuesto en el recurso ante nos, Universal sostiene que, el foro primario incidió al no excluir el informe y el testimonio del CPA, Garavito Medina.   A su entender, el alcance de la prueba pericial no se ajusta a la realidad y no puede servir para conocer la verdad para ayudar al juzgador, según lo establecido en la Regla 702, 32 LPRA Ap. VI, R.702 y lo resuelto *SLG Font Bardón v. Mini-Warehouse,* supra. Al referirse al tratadista, Ernesto Chiesa Aponte, en Reglas de Evidencia 2009, destacó que, los cambios en las reglas evidenciarias de 2009 establecen que, la falta de valor probatorio es un criterio para la admisibilidad de la prueba pericial. Además, el TPI deberá evaluar los criterios, según la citada regla evidenciaria, lo cual se debe sopesar frente al prejuicio indebido que genere la admisión y la dilación indebida de los procesos.  Sobre este último factor, Universal puntualizó que, el auto de *certiorari* debe expedirse  para descartar en esta etapa de los procedimientos, el ofrecimiento de prueba pericial inservible, previo a los exorbitantes gastos y recursos que conlleva celebrar el juicio que se estima puede consumir más de 125 días, toda vez que, trata de 56 agentes de seguros contra tres aseguradoras con múltiples alegaciones de la demanda principal, las reconvenciones y demandas contra coparte, así como, otra prueba pericial. A su entender, no es razonable escuchar más de 56 testimonios y el perito para concluir que, los promoventes no tienen prueba de un hecho esencial a su causa de

acción. Ello, porque el perito presume que las más de 55,000 pólizas en disputa se renovaron y no contempla la falta de licencias vigentes de los reclamantes, entre otros factores. En la alternativa, solicitaron que esta Curia ordene la vista de admisibilidad bajo la Regla 109 de las Reglas de Evidencia, *supra*.

Por su parte TOLIC y T&T arguyen que, mediante el informe pericial solo se ofrece una opinión especulativa fundamentada en presunciones inexistentes e inferencias de hechos que no se sustentan en prueba alguna. Destacaron que, en este caso los demandantes deben probar la cantidad de primas pagadas a TOLIC por cada póliza. Sin embargo, como parte de la prueba pericial ofrecida se desprende, a su entender que, el perito optó por no examinar el comportamiento de la cartera después del 31 de octubre de 2008, ni la cantidad de prima generada por la cartera después de esa fecha, por consiguiente, no puede concluir que las primas de renovaciones de pólizas fueran efectivamente pagadas y cobradas por TOLIC en el transcurso de esos diez años. Indicaron que, la etapa procesal donde se encuentra el presente litigio es la más ideal para la celebración de la vista probatoria, toda vez que, concluyó el descubrimiento de prueba, las partes anunciaron su prueba y entregaron el segundo informe de conferencia con antelación al juicio.

En aras de fundamentar su postura plantearon que, las propias admisiones del CPA, Garavito Medina demuestran que, su análisis está plagado de deficiencias, porque descansa en una prueba documental enviada por el bufete de abogados que representa a los agentes de seguros y no fue objeto de investigación independiente alguna. De esta forma y a su entender, el perito arribó a la errada conclusión que todas las pólizas que TOLIC le compró a Universal se mantuvieran activas y que todo asegurado pagó la prima de su póliza durante todo ese tiempo. Cónsono con lo anterior,

ofrecen el hecho estipulado sobre los porcentajes requeridos para que un agente se considere estar "vested" y así tenga un derecho para reclamar y recibir 100% de las comisiones de las renovaciones de las pólizas de la cartera. Lo antes, con el propósito de demostrar que, el TPI incidió al no considerar que el informe pericial ignora el hecho estipulado sobre cuando es que procede pagar distintos porcientos de la comisión de las renovaciones en función de la duración del contrato. A lo antes añade que, el perito tampoco incluyó en su análisis que 27 de los agentes demandantes no tuvieron sus licencias en vigor durante el periodo que reclaman comisiones de renovación. Argumentaron que, resulta impermisible admitir un informe pericial que descansa en la premisa que todos los agentes tienen igual derecho a cobrar por comisiones de renovaciones y que sus reclamaciones no se encuentran prescritas conforme lo resuelto en *Sandra Monsegur Suárez y otros v. Trans-Oceanic Life Insurance Co. y otros*, KAC 2017-0444 que establece tres años como el periodo prescriptivo aplicable al cobro de comisiones y constituye la ley del caso.

En fin, los peticionarios consideran erróneo el análisis del foro primario porque el asunto a considerar no es un asunto de credibilidad y peso de la prueba, sino de la falta de utilidad del informe y el testimonio del CPA, Garavito Medina, al no servir de beneficio adjudicativo para el foro judicial.

En reacción, la parte recurrida sostiene que, el foro primario no abusó de su discreción al denegar la moción *ilimine*, sin celebrar una vista previa. A su entender, conceder lo solicitado en esta etapa de los procedimientos fragmentaría la litigación. Arguye que, los peticionarios pretenden equiparar asuntos de valor probatorio con elementos sobre la admisibilidad del informe pericial y el testimonio del perito. Sostiene que, la pretensión de los peticionarios es prejuzgar los méritos de la demanda y lograr la exclusión de la

prueba pericial que no avala la teoría fáctica de la causa instada. Discute la jurisprudencia interpretativa, así como, lo expuesto por los tratadistas en la materia, en aras de establecer que, en esencia, la casuística identificada por los peticionarios no resulta aplicable al cuadro fáctico del caso de autos y que en el foro local -contrario a lo practicado en el foro federal-, no necesariamente procede excluir la prueba pericial bajo *Daubert*. Ello, porque hay un mayor grado de flexibilidad en nuestro foro bajo la Regla 403 de las Reglas de Evidencia, *supra.*

Al entender sobre la presente causa, reconocemos la aplicabilidad de la Regla 702, *supra,* junto a la Regla 403, *supra.* En este proceso sobre la admisibilidad de la prueba pericial es medular determinar primero si se cumplen los siguientes criterios, a saber: si el testimonio está basado en hechos o información suficiente; si el testimonio es el producto de principios y métodos confiables; si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; las calificaciones o credenciales de la persona testigo; y la parcialidad de la persona testigo. Luego, los tribunales deben considerar los siguientes factores: "(i) el riesgo de causar un perjuicio indebido; (ii) el riesgo de causar confusión; (iii) el riesgo de causar desorientación del Jurado; (iv) la dilación indebida de los procedimientos, y (v) la presentación innecesaria de prueba acumulativa". Véase Regla 403 de Evidencia, *supra.*

Lo antes implica que el legislador avaló un escrutinio evidenciario o "evidentiary standard" distinto para determinar la admisibilidad de un informe y testimonio pericial. Se exige que, la parte no solo demuestre la relevancia de la prueba pericial ofrecida, sino también, su confiabilidad que resulte en una ayuda al tribunal para adjudicar controversias sin provocar dilaciones y confusiones

innecesarias, al contar con poco o ningún valor probatorio. Por ello, la admisión o exclusión de la prueba pericial no debe ser sopesada o pospuesta de forma liviana sin el beneficio de una vista previa. Es decir, de un estudio detenido de la normativa antes expuesta colegimos que, la admisibilidad del informe debe ser el resultado del ejercicio concienzudo del juez o la jueza que dirige los procedimientos para conceder o denegar el reclamo de exclusión, luego de atender cada uno de los factores establecidos en la Regla 702, *supra*, en consideración de los criterios expuestos en la Regla 403, *supra*.

Los recurridos propusieron como perito al CPA, Daniel E. Garavito Medina (CPA, Garavito Medina). Según surge del expediente mediante el *Segundo Informe Enmendado de Conferencia con Antelación al Juicio* el perito "atestará sobre sus cualificaciones profesionales y periciales, su *curriculum vitae*, el informe pericial que preparó para el presente caso, la metodología empleada, <u>sus hallazgos y conclusiones y sobre las cuantías que este determinó para cada uno de los demandantes, así como la cuantía estimada de las comisiones adeudadas</u> a los agentes demandantes que suma una cantidad total de diez millones cuatrocientos noventa y tres mil quinientos noventa y siete dólares con sesenta y cuatro centavos ($10,493,597.64) y la forma en que llegó a estas. Atestará sobre los documentos examinados como parte de su análisis y sobre cualquier otro asunto que sea pertinente al caso de autos".[26] A esos efectos, el CPA Garavito Medina preparó un informe pericial entregado el 12 de julio de 2021[27] y se realizó una deposición el 6 de diciembre de 2021. Transcurrido varios años las partes concluyeron el descubrimiento de prueba y presentaron dos informes de conferencia con antelación al juicio.

---

[26] Apéndice, KLCE202500320, pág. 1447.
[27] Apéndice, KLCE 202500300, págs. 613-632.

De una lectura de la *Resolución* recurrida resulta evidente que, el foro primario determinó que en su día adjudicaría el valor probatorio de la prueba pericial sin indicar de forma fehaciente, si la misma cumple con lo requerido en nuestra Regla 702, *supra,* en armonía con la Regla 403, *supra.* No haber realizado dicho ejercicio con el beneficio de una vista evidenciaria, en esta etapa de los procedimientos, derrota el propósito de las citadas reglas, precisamente porque se pospuso un asunto que no debería esperar a la apelación para atenderse.

Es preciso señalar que, en esencia, los promoventes de la acción instaron la demanda en búsqueda de cobrar lo presuntamente adeudado, así como el resarcimiento de sus daños y perjuicios. De ahí, se puede apreciar que, la causa principal en este caso es el cobro de dinero y por el alegado incumplimiento de contrato. El propósito del perito es, precisamente, asistir al tribunal dentro de un litigio complejo a identificar el cálculo correcto correspondiente a la deuda que resulta ser líquida y exigible de cada uno de los 56 demandantes y sus respectivos contratos, conforme al derecho aplicable.

Del informe incluido en nuestro apéndice se observa, en apretada síntesis que, el escrito fue preparado en el 2021 y con posterioridad las partes han realizado múltiples estipulaciones de hechos. En su exposición, el perito expuso que, en algunas instancias sus hallazgos y recomendaciones responden a estimados y un modelo sugerido. Además, indicó que sus conclusiones podrían ser revisados, si recibe información adicional. La celebración de una vista para adjudicar la moción *ilimine,* en esta etapa, no trastocaría el calendario judicial, ya que de todos modos, el foro primario tendrá que justipreciar si el informe, según presentado, resulta de ayuda para el juzgador en esta etapa de los procesos y si supera los factores establecidos en la Regla 403, *supra,* como parte de los asuntos

pendientes ante su consideración sin causar dilación innecesaria. De lo contrario, apreciamos que, permitir el desfile de la prueba de una prueba pericial que resulte en ninguna ayuda al juzgador de los hechos, podría resultar en la posposición y consideración de asuntos medulares y, así como, la prolongación innecesaria de un proceso judicial que lleva pendiente desde el 2009. La doctrina es clara el juzgador no debe permitir la prueba pericial que no le sea de ayuda. *S.L. Font Bardón v. Mini-Warehouse*, supra, pág. 343, por lo que, sólo podría cerciorarse de ello con el beneficio de una vista y justipreciar el cumplimiento de lo requerido en las Reglas 702 y 403 de las Reglas de Evidencia, *supra*.

Por todo lo antes respetuosamente disiento. Procede expedir el auto de *certiorari*, revocar el dictamen recurrido y ordenar la celebración de la vista evidenciaria, según solicitada por los peticionarios. Lo antes, no prejuzga los méritos de la causa, como tampoco, las determinaciones que habrá de realizar el foro primario dentro de su discreción judicial.

**MONSITA RIVERA-MARCHAND**
**JUEZA DE APELACIONES**